[Sac. No. 6224. In Bank. Feb. 8, 1952.]

LAVONA LENAHAN, Respondent, v. EULA POOLE, Appellant.

Hewitt & McBride and James R. McBride for Appellant.

Ralph W. Rutledge, Robert E. Hatch and Richard E. Patton for Respondent.

GIBSON, C. J.—This is an action for damages for personal injuries sustained when plaintiff was struck by a board which became detached from the awning in front of defendant's store. The trial court, sitting without a jury, awarded judgment to plaintiff, and defendant appeals, contending that the evidence is insufficient to establish liability and that the damages allowed are excessive.

The awning, which had been installed by defendant, extended across the entire front of her store and over the door of an adjoining barbershop. It consisted of a piece of canvas on a roller, and the outer edge of the canvas was fastened to a wooden board by nails and tacks. Metal pipes or side arms were attached to the board and extended to the side of the building, and the construction was such that the canvas supported the weight of the board and at least part of the weight

of the side arms. The awning was raised and lowered by means of a crank inserted in a gear box connected to the roller. Before the awning could be lowered, it was necessary to roll up the canvas slightly in order to release a ratchet pin which held the roller in place.

The awning was being lowered by an employee of the barbershop when the wooden board fell and struck plaintiff, who was on the sidewalk and about to enter defendant's store. The barbershop employee did not have defendant's express permission to lower the awning on this occasion, but he had lowered it many times in the past, and defendant was aware that it had frequently been operated by persons other than herself, including someone in the barbershop. A crank of the type used in lowering the awning was kept in defendant's store, and another was kept in the barbershop.

Persons who saw the awning shortly after the accident testified that the wooden board and the two side arms were on the street, that the canvas was torn, that strips of canvas from 3 to 4 feet in length were hanging down from the roller, and that large pieces and strips were still attached to the board. One witness stated that the canvas had "pulled out from the nails" in some places. The awning had been installed by a man in the awning business about two and one-half years before the accident occurred. Defendant testified that she "always would look" at the awning to see if it was torn, but she did not recall any specific occasion when she had done so. She also said that she did not inspect the awning after it was attached to the building but left this to the awning man, and he testified that he did not inspect it until after the accident.

The evidence is clearly sufficient to support the judgment. Defendant was required to exercise ordinary care to see that the awning was carefully and securely installed and to discover and remedy subsequently arising conditions of disrepair which reasonable inspections would disclose. (See *Mondine* v. *Sarlin*, 11 Cal.2d 593, 597 [81 P.2d 903] [injury to business visitor] ; *Potter* v. *Empress Theatre Co.*, 91 Cal. App.2d 4, 12 [204 P.2d 120] [injury to passerby on sidewalk] ; Rest., Torts, §§ 364, 365.) The fact that the canvas tore apart, leaving long strips on the roller and other pieces on the board, warrants an inference that it had deteriorated and was in a dangerous and defective condition which could have been discovered upon a reasonable inspection, and the evidence shows that no such inspection was made.

█ Defendant contends, in effect, that the *proximate* cause of the accident was the negligence of the barbershop employee, for which she would not be liable. She relies on the testimony of the man who installed the awning, and who examined it after the accident, that the canvas was in good condition and that, in his opinion, it was torn loose from the board because the awning was rolled up too tightly. As we have seen, however, there was evidence from which it could be inferred that the canvas was not in good condition, and the court was not obliged to accept the opinion of the witness.

█ Plaintiff suffered a fracture of the second cervical vertebra, a possible compression fracture of the sixth cervical vertebra, an abnormal depression of the skull, and a concussion. At the time she was injured she was about 25 years of age, and prior to the accident she had enjoyed good health. Since then, however, and including a period of six years before the case came to trial, she has been subject to frequent headaches, severe pains in her neck, and extreme nervousness. All of these symptoms have persisted and become aggravated with the passage of time, and there was testimony that they were likely to continue for a long period. On a number of occasions plaintiff has suffered from convulsive fits and fainting spells. Because of her condition she has been unable to undertake steady employment and has been forced to give up several jobs. The judgment awarded her the sum of $8,000 as general damages and $465.56 as special damages, and we cannot say that the sums allowed were excessive or unreasonable.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.