[Civ. No. 17915. First Dist., Div. One. Feb. 5, 1959.]

WARREN HAYASHI et al., Appellants, v. ALAMEDA COUNTY FLOOD CONTROL AND WATER CONSERVATION DISTRICT et al., Respondents.

Mas Yonemura and Thomas B. Richardson for Appellants.

Hagar, Crosby & Rosson, Paul L. May and Edwin A. Heafey, Jr., for Respondents.

PETERS, P. J.—Plaintiffs brought this action against the defendant district and others setting forth two causes of action, one alleging negligence, and one purporting to set forth an action in the nature of inverse condemnation. The demurrer to the third amended complaint was sustained without leave to amend, and plaintiffs appeal.

The allegations of the complaint can be briefly summarized as follows: The plaintiffs own certain property in Alameda County upon which they operate their greenhouse and plant growing business. The defendant flood control district owns and operates Alameda Creek as part of its operations. Plaintiffs' property is located about 300 yards north of the channel of Alameda Creek, and is within the geographical boundaries

of the district. The district owns and operates 8-foot levees along those portions of Alameda Creek here involved. On December 23, 1955, there occurred a 60-foot break in the levee about 300 yards from plaintiffs' property caused by water accumulating in such quantities in the watershed as to run against the levees with great force. At the same time large quantities of debris such as logs, stumps and brush collected in the stream near the break obstructing its flow. Thereafter on numerous occasions, and particularly on January 5, 1956, the plaintiffs warned the defendant district of the break and of the obstructions, and informed this defendant that to protect the adjoining property the debris should be removed and the levee repaired. No repairs were made, and on January 15, 1956, and again on January 26, 1956, "as the direct and proximate result of the neglect of the defendants" large quantities of water carrying debris flowed through the break and onto plaintiffs' land, causing damage to plants and greenhouses in the amount of $77,000.

In a second cause of action plaintiffs purported to state a cause of action in inverse condemnation. In addition to the facts alleged in the first cause of action it is averred that, after notice, the defendants continued to operate and maintain the structures in a defective condition, and while these structures were being so maintained and operated the water and debris flowed on plaintiffs' land, causing the damage above alleged.

Within the time required by law a claim for such damages was properly served and filed.

Defendant district demurred to both causes of action. The trial court sustained the demurrer without leave to amend, and judgment was entered accordingly in favor of the district. From this judgment plaintiffs appeal.

The first cause of action sounds in tort, that is, it charges negligence against the district. As to this cause of action the basic question presented is whether defendant district is subject to such tort liability. The respondent district concedes that, in a proper case, it is liable in tort. At page 6 of respondents' brief appears the statement "We have no quarrel with the argument that the legislature has waived the sovereign immunity of the District in proper cases." This concession is in accord with the law.

Article 20, section 6 of the California Constitution provides that "Suits may be brought against the State in such manner and in such courts as may be directed by law." This section,

of course, does not create liability. It is permissive, in that it permits the Legislature to prescribe how and when suits may be brought against the state and its political subdivisions. (*Rose* v. *State,* 19 Cal.2d 713 [123 P.2d 505].)

It is true that such a district, being a governmental agency, is not liable for tort unless the Legislature has seen fit to impose such liability by statute. (*Whiteman* v. *Irrigation Dist.,* 60 Cal.App. 234 [212 P. 706].) If it be assumed that the Public Liability Act (Gov. Code, § 53051) in imposing tort liability on "local" agencies, does not include flood control districts (see *Barlow* v. *Los Angeles County Flood etc. Dist.,* 96 Cal.App.2d 979 [216 P.2d 903]; *Brandenburg* v. *Los Angeles Flood Control Dist.,* 45 Cal.App.2d 306 [114 P.2d 14]), the legislative intent to impose such liability can be found in another statute, that is, in the basic statute creating the district. That statute is the Alameda County Flood Control and Water Conservation District Act. (Stats. 1949, p. 2241, chap. 1275, as amended; West's Ann. Water Code—Appendix—chap. 55, p. 340.) Section 5 of that statute grants the power to the district "To sue and be sued in the name of said district," and section 29 consents to liability for tort in the following language: "Claims against the district whether arising out of contract, tort, or the taking or damaging of property without compensation must be made in writing and filed with the board within six months after the cause of action arises. Claims shall be presented in the general form and manner prescribed by general law relating to the making and filing of claims against counties. Such claims may be amended within said six months to correct defects in form or statement of facts. No action against the district shall be commenced or maintained unless such claim relating thereto has been filed as hereinabove prescribed and action thereon commenced within one year after the cause of action arose."

This section clearly makes the district amenable to a suit in tort. The section necessarily implies that if the claim filing procedure is followed, a suit in contract or in tort may be filed against the district so long as the one-year limitation provision is observed. This conclusion is not contrary to the cases holding that the Los Angeles Flood Control District is not liable in tort. (*Janssen* v. *County of Los Angeles,* 50 Cal.App.2d 45 [123 P.2d 122]; *Brandenburg* v. *Los Angeles Flood Control Dist.,* 45 Cal.App.2d 306 [114 P.2d 14]; *Barlow* v. *Los Angeles County Flood etc. Dist.,* 96 Cal.App.2d 979

[216 P.2d 903].) Those cases held that the Los Angeles Flood Control District was not liable in tort, either under the then provisions of the Public Liability Act or of any other statute. These holdings were quite correct. An examination of the statute creating the Los Angeles District discloses that there is no section in it comparable to section 29 found in the Alameda Act. (See Stats. 1915, p. 1502, chap. 755, as amended; West's Annotated Water Code, Appendix chap. 28, p. 335.) Thus the concession of the respondent district to the effect that it "in a proper case" is liable for tort is in accordance with the law.

It is the contention of the district, however, that this is not "a proper case" for the imposition of such liability. Its theory is somewhat difficult to follow. It states that to allege a "proper case" of tort liability the complaint must allege "that respondent District had a legally imposed duty which it failed to perform and that such failure was the proximate cause of appellants' damages." (Res. Br. p. 5.) It is claimed that the complaint contains no such allegations. We agree that such allegations are necessary, but believe that the complaint is sufficient in this respect. Essentially the complaint alleges that an unusually heavy flow of water caused a break in the district's levee; that this fact and the danger therefrom were called to the attention of the district; that 10 days after this notice and again 21 days after the notice, water flowed upon plaintiffs' property causing damage, partly because debris had collected in the vicinity of the break; that in spite of the notice the district did nothing to remove the debris or to repair the levee.

Respondent district argues that such allegations do not allege the existence of any duty owed to appellants and its violation. It correctly points out that the district is not an insurer. (*Curci* v. *Palo Verde Irr. Dist.*, 69 Cal.App.2d 583 [159 P.2d 674]; *Stone* v. *Los Angeles County Flood Control Dist.*, 81 Cal.App.2d 902 [185 P.2d 396].) But those cases, while recognizing that no insurer's liability exists, also recognized that the districts involved did owe the landowners a duty not to injure their lands or property through any act of neglect on their part that it was under a duty to perform. Thus, the real question is whether the district was under a duty to repair after notice—if so, a cause of action has been pleaded.

The district urges that it was under no duty to take any steps to repair the levee or to protect the lands of plaintiffs

because these waters were flood waters, and such waters constitute a "common enemy" which may be repulsed without liability. Under the "common enemy" doctrine it is undoubtedly the law that an owner, in a period of peril from floods, may erect structures on his land to protect his land from the flood waters without liability, even though such structures result in the diversion of water upon a neighbor's land. (*Weinberg Co.* v. *Bixby*, 185 Cal. 87 [196 P. 25] ; see 3 Stan. L. Rev. 361.) But it is equally true that, after the erection of such a structure, the party erecting it is under a duty to maintain it in such a condition as not to cause injury because of negligent maintenance. In the instant case the district undoubtedly had authority to build the levee. But that levee was not constructed at a time of peril. It was not a temporary defensive measure, but a permanent installation. Therefore, contrary to respondent's contention, the construction of the levee does not fall within the "common enemy" doctrine.

But, the district argues, under the terms of the statute creating it, it was under no obligation to protect people from floods, and so had no duty to construct the levee. Based on this premise it is argued that the district owed no duty to appellants. *Weck* v. *Los Angeles County Flood Control Dist.*, 80 Cal.App.2d 182 [181 P.2d 935], is cited in support of that contention. That case states (p. 203) : "There is no evidence that the protective structures were inherently defective. No duty rested on the district to keep the water out of plaintiffs' lands, as contended by plaintiffs. The statute creating the district contained no mandatory direction to build public improvements of any particular character or design, or any improvement at all. Its failure to construct an impervious and indestructible wall along the wash was not an act constituting the taking or damaging of private property."

Under this case, and others that could be cited, it is probably the law that a flood district is under no enforceable obligation to build levees or other public improvements to keep out floods. But that is not the problem. Here the levee was constructed. The question is, after the public improvement is constructed, is the district, after notice, under an obligation to maintain it in such a manner so as not to injure the adjoining property as the result of negligent maintenance? The fact that the district may not have been under a duty to construct the levee, does not answer this question. Whether

such a duty exists is dependent on general common law principles.

Under the general common law there can be no doubt that a landowner is responsible for damages caused by the negligent disrepair of an artificial structure. The applicable principle is thus stated in section 365 of the Restatement of Torts:

"A possessor of land is subject to liability for bodily harm caused to others outside the land by the disrepair of a structure or other artificial condition thereon, if the exercise of reasonable care by the possessor or by any person to whom he entrusts the maintenance and repair thereof

"(a) would have disclosed the disrepair and the unreasonable risk involved therein, and

"(b) would have made it reasonably safe by repair or otherwise."

The comments to this section are quite significant. They read as follows:

"*a. Meaning of 'disrepair.'* The word 'disrepair' indicates that the condition of the structure has deteriorated since its creation. It includes dilapidations caused by the usual force of nature, by wear and tear, or by a sudden and previously unexpectable change caused by an unusual and unexpectable natural force, such as a cyclone or flood, by a fire or by the innocent, intentional or negligent acts of the possessor or third persons acting with or against his consent.

"*b.* If a structure suddenly and without the fault of the possessor becomes dangerously dilapidated the possessor is not subject to liability for any harm done thereby to persons outside the land until he has had an opportunity by the exercise of reasonable care to make the structure safe."

This section of the Restatement has been referred to with approval by the California Supreme Court. (*Lenahan* v. *Poole*, 38 Cal.2d 392, 394 [240 P.2d 276, 34 A.L.R.2d 481].) Moreover, the California cases have definitely held that a landowner is liable for property damage to those outside his premises caused by the negligent maintenance of structures upon his land. (*Wiedekind* v. *Tuolumne County Water Co.*, 83 Cal. 198 [23 P. 311]; *Bacon* v. *Kearney Vineyard Syndicate*, 1 Cal.App. 275 [82 P. 84].)

This principle is decisive of the present appeal. The district, whether required to do so or not, erected a structure, a levee, on its property. A break occurred in the levee because of heavy floods. The district is not being charged with liability

for that break. Thereafter, there existed a state of disrepair of a structure on the district's land which it knew or should have known constituted a danger to those in the vicinity of the break. The district was notified of the break and of the danger. Thus, under the allegations, there is no doubt of respondent's knowledge of the defective condition. (On this phase of the case see *Armstrong* v. *Luco,* 102 Cal. 272 [36 P. 674].) The complaint alleges that respondents, after notice, had 10 to 21 days to repair the levee and did not do so. The damage to appellants' property then occurred during a heavy rainstorm. Certainly 10 to 21 days cannot be held, as a matter of law, to be such a short time that the district could not reasonably have repaired. It should be mentioned that section 22 of the Alameda Act specifically gives the district the power to contract for day labor without the necessity of publishing bids for "channel protection" or for "emergency work when necessary in order to protect life and property from impending flood damage."

It seems to be the basic thought of the district that it was under no affirmative duty to act even after notice of the defective condition of the levee and of the danger to the adjoining landowners. This is the basic fallacy of its case. Under the Restatement, which sets forth in succinct form the common law rule, there is such a duty. After having constructed the levee the district was under the same duty to maintain it in a reasonable manner as a private landowner would be, at least after notice. Thus the plaintiffs have stated a good cause of action for negligence.

The plaintiffs also contend that the other count of the complaint states a cause of action for inverse condemnation under article I, section 14 of the California Constitution. It is their theory that they have stated a good cause of action for the taking or damaging of their property for a public use.

We think that this count does not state a cause of action and that the demurrer was properly sustained as to it. The most recent cases have made a distinction between negligence which occurs when a public agency is carrying out a deliberate plan with regard to the construction of public works, and negligence resulting in damage growing out of the operation and maintenance of public works. These cases hold that the damage resulting from the former type of negligence is compensable under article I, section 14, whereas damages resulting from the second type of negligence are not recoverable in an inverse condemnation proceeding, but are recover-

able, if at all, only in a negligence action. (*Bauer* v. *County of Ventura*, 45 Cal.2d 276 [289 P.2d 1] ; *Ward Concrete Products Co.* v. *Los Angeles Flood etc. Dist.*, 149 Cal.App.2d 840 [309 P.2d 546] ; *Youngblood* v. *City of Los Angeles*, 160 Cal. App.2d 481 [325 P.2d 587].) It has been definitely held that a property owner may not recover in an inverse condemnation proceeding for damages caused by acts of carelessness or neglect on the part of a public agency. (*Neff* v. *Imperial Irrigation Dist.*, 142 Cal.App.2d 755 [299 P.2d 359].) ▌▌ In the present case the district did not cause the original break in the levee, nor is it charged that such occurred by reason of negligence. Negligent design or construction is not charged, nor did the district deliberately divert the water onto the plaintiffs' lands. It is charged with negligent failure to act thereafter, that is, with negligence in the operation and maintenance of its property. In our opinion that does not charge a taking of property for public use under the Constitution.

The judgment appealed from is reversed, with instructions to the trial court to overrule the demurrer to the first cause of action.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied March 6, 1959, and the petition of respondent Alameda County Flood Control and Water Conservation District for a hearing by the Supreme Court was denied April 1, 1959 Peters, J., did not participate therein.