[Civ. No. 18449.   First Dist., Div. Two.   Oct. 4, 1960.]

CONSTANCE B. KAMBISH, Respondent, v. SANTA CLARA VALLEY WATER CONSERVATION DISTRICT OF SAN JOSE, Appellant.

Jones, Griswold & Henley, Leon G. Rubino and Cyril Viadro for Appellant.

Bronson, Bronson & McKinnon as Amici Curiae on behalf of Appellant.

Campbell, Custer, Warburton & Britton and Walter E. Rankin for Respondent.

DRAPER, J.—Defendant water conservation district appeals from judgment on jury verdict awarding plaintiff damages to land and personalty sustained when her property was flooded in 1955.

The purpose of defendant district is to store water during the rainy season and release it, during the dry months, into streams and percolation areas whence it seeps into the underground gravel strata underlying the Santa Clara Valley. It is not a flood control district.

The district maintains and operates Almaden Dam, constructed across Los Alamitos Creek about a mile upstream from plaintiff's land. This dam is about 100 feet high. Its reservoir has a capacity of some 2,000 acre-feet. It was designed to operate in conjunction with defendant's Calero reservoir, which has a capacity of some 9,200 acre-feet, but a relatively small watershed. A gravity flow canal, 4½ miles long, runs from Almaden to the larger reservoir. Water from Almaden Reservoir is admitted to the canal by a manually operated valve, but will flow only when the water in Almaden Reservoir is over 30 feet deep. At maximum capacity the canal can drain 140 acre-feet in a 24-hour period. However, during rains the canal is also fed by rivulets along its course, and during very heavy rains input from Almaden Reservoir must be stopped to avoid overflowing of the canal.

Almaden Dam has a spillway some 8 feet below the top of the dam. A valve permits flow below the dam into Los Alamitos Creek. When fully open, this valve permits discharge of somewhat less than 200 acre-feet per day. Normal conservation procedure is to control the flow through this outlet so that water runs downstream to the point beyond which there is no percolation, and minimal amounts pass that point to waste in San Francisco Bay.

On December 18, 1955, the Almaden Reservoir was empty. Rainfall, measured at about 9:30 each morning, amounted to 5.06 inches December 18-19, and the reservoir began to fill. 3.77 inches of rain fell December 19-20; 0.4 inches December 20-21; and 7.22 inches December 22-23. The creek valve remained closed until 8:35 p. m. on the 22d. There is some evidence that the water level in the reservoir was about 5 to 6 feet below the spillway on the 20th, and about a foot higher on the 21st. At about 10 p. m. December 22 water began going over the spillway. Peak flow of about 5,500 cubic feet per second, over the spillway and through the creek valve, was reached at about 1 a. m. December 23. The water overflowed the creek banks and entered upon plaintiff's land downstream, causing the damage for which this action was brought.

Plaintiff offered testimony that no water flowed through the Almaden-Calero Canal from early December until the 25th and that the canal was clogged by debris during this period. The district offered records to establish that water did flow through the canal, at or near maximum safe capacity, commencing in the afternoon of December 20. In view of the jury's verdict, we assume that it resolved this conflict against defendant.

The claim filed by plaintiff with the district was based upon negligent "operation" of the Almaden-Calero Canal, and negligent "control" of the waters in Los Alamitos Creek. The complaint bases claimed liability upon allegations that the district maintained the canal and dam in a dangerous and defective condition, and "carelessly controlled the flow of water under its control." The pretrial order states that the action is based on the theories of interference with normal flow of drainage, inherently dangerous activity, dangerous and defective condition of dam and canal, negligent operation, and inverse condemnation. In the course of trial, the trial judge determined that the only tenable theory of recovery was by way of inverse condemnation, and the case was submitted to

the jury on that theory alone. Respondent's brief concedes that "This conclusion is probably the correct one since the Water Conservation Act of 1931 which created the district did not include any provision for liability on the part of the district for negligence or the maintenance of a dangerous or defective condition."

Appellant district asserts that the facts do not permit recovery on the theory of inverse condemnation. We agree. A property owner cannot recover in inverse condemnation unless, on the same facts, he would have a cause of action against a private citizen (*Bauer* v. *County of Ventura*, 45 Cal.2d 276, 283 [289 P.2d 1]). The owner of a dam may permit flood waters to flow over a dam in such quantities as naturally flow into the reservoir. Such owner is under a duty not to worsen the condition of a downstream owner, but he is under no duty to improve that situation by using the dam for flood control (*Smith* v. *East Bay Municipal Util. Dist.*, 122 Cal.App.2d 613, 619-620 [265 P.2d 610], and cases there cited). Although *Smith* affirms a judgment for plaintiff on the ground that defendant dam owner imported water from outside the watershed which caused or substantially contributed to the flooding of plaintiff's land, it clearly enunciates the accepted rule that, lacking such importation, the dam owner is not liable where he has not augmented the flow beyond that which would have occurred in the absence of the dam. Here no water was imported. The record is clear that the only water which flowed down Alamitos Creek to plaintiff's land on the night of the flood was rain which fell on the natural watershed of the creek. The dam in no way augmented that flow, either in total or at any given moment. On the contrary, there is uncontradicted evidence that the effect of the dam was to reduce the flow to plaintiff's land by 11 per cent of the peak flow which would have been reached in the absence of a dam.

The most that plaintiff claims is that the canal to Calero reservoir and the creek valve could have been opened two or three days before the heavy rainfall of December 22, thus affording somewhat greater space in the reservoir for retention of the storm waters of December 22. But there is no evidence that the comparatively small additional storage space thus created would have reduced in any degree the flood damage to plaintiff. In view of the evidence that the one storm de-

posited 2,300 acre-feet of water it is doubtful that these minor measures would have reduced plaintiff's damage at all.

In any event, defendant was not under a duty to take these measures. The district's sole purpose was to take advantage of rainfall to store water to be released when rains ceased. To release water before the 22nd so as to create storage capacity to minimize the danger of flood from possible future rains would have been to reverse this purpose and function. More important, the charge against the district is only that it failed to divert or spread the flow, not that it in any way augmented the natural flow of the stream. In the light of the purpose of this water conservation district, there is little question of the applicability of the doctrine of *Smith* v. *East Bay Municipal Util. Dist., supra.*

The existence of the dam, operated precisely as it was at the time in question, in no way worsened the condition of plaintiff as against what it would have been in the absence of the dam. On the contrary, plaintiff's condition was materially better than if the dam had not existed. ▮▮▮ Damage resulting from negligence in routine operation having no relation to the function of the project as conceived is not a taking for public use and thus not a basis for inverse condemnation. (*Bauer* v. *County of Ventura, supra,* 45 Cal.2d 276, 286; see also *Hayashi* v. *Alameda County Flood Control Dist.,* 167 Cal.App.2d 584 [334 P.2d 1048].)

Appellant asserts error in the denial of its motion for directed verdict, and seeks reversal with directions to the trial court to enter judgment in its favor. We therefore consider whether plaintiff can recover on any theory other than that of inverse condemnation.

Where there is a long-continued diversion of water, an owner who makes substantial expenditures in reliance thereon has the right to have the diversion continued if his investment would otherwise be destroyed (*Natural Soda Products Co.* v. *City of Los Angeles,* 23 Cal.2d 193, 197 [143 P.2d 12]; *People* v. *City of Los Angeles,* 34 Cal.2d 695, 697 [214 P.2d 1]; *Smith* v. *East Bay Municipal Util. Dist., supra,* 122 Cal.App.2d 613, 620-621). But plaintiff conceded, at oral argument, that this ground is not urged on the facts of this case.

▮▮▮ Plaintiff-respondent substantially concedes that tort liability for injuries resulting from "the dangerous or defective condition of public property" (Gov. Code, § 53051) cannot be asserted against defendant district. The concession

seems required. Defendant is not a local agency within the code definition (see *Brandenburg* v. *Los Angeles County Flood Control Dist.*, 45 Cal.App.2d 306, 312-313 [114 P.2d 14]). The Water Conservation Act of 1931 (Stats. 1931, ch. 1020, p. 2045; 1 Deering's Water Code, Act 9127C; West's Water Code Appendix, § 39-2) does not constitute the district a mere unit of the county, as did the act construed in *Bauer* v. *County of Ventura, supra.* Nor does it, as do some other acts (see *Hayashi* v. *Alameda County Flood Control Dist., supra*), provide for district liability for negligence.

It follows that there is no basis for recovery, and that the trial court erred in denying defendant's motion for directed verdict.

Judgment reversed, with direction to enter judgment for defendant.

Kaufman, P. J., and Shoemaker, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 30, 1960.