[Civ. No. 44084. Second Dist., Div. Four. Feb. 28, 1975.]

PATRICIA INGRAM et al., Plaintiffs and Appellants, v.
CITY OF REDONDO BEACH, Defendant and Respondent.

**COUNSEL**

Robert Holzhauer for Plaintiffs and Appellants.

Baker, Began & Auw and William D. Began for Defendant and Respondent.

**OPINION**

**COLE, J.**\*—Plaintiffs sued for damages to their properties, located in the City of Torrance, resulting when an earthen retaining wall of a drainage sump collapsed, allowing flood waters to go onto the properties and inundate plaintiffs' homes.

The matter was tried to the court, on the issue of liability only. The court found for defendant. Plaintiffs appeal. We reverse.

The court found,[1] inter alia, that "Plaintiffs failed to establish any liability on the part of defendant City of Redondo Beach for 'inverse condemnation' within the meaning of California Constitution Article I, Section 14; *no damages to plaintiff occurred as a proximate result of any public improvement of defendant* City of Redondo Beach as deliberately designed and constructed." (Italics supplied.) The key question on this appeal is whether the court used the correct principle of law with respect to causal responsibility. It is here that we feel that error occurred.

Plaintiffs also suggest that the finding is not supported by the evidence. Their brief fails to support its references to the testimony by appropriate references to the record as required by rule 15, subdivision (a) and we decline to search the record. Therefore, we do not determine the sufficiency of the evidence.

---

\*Assigned by the Chairman of the Judicial Council.

[1]It makes little difference here if the determination is properly regarded as a finding of ultimate fact, or as a conclusion of law. As will be stated, it is based on an erroneous concept of the law of causation applicable to an inverse condemnation claim.

*Facts*

It was stipulated that the sump was owned, designed, constructed and maintained by defendant City of Redondo Beach within the limits of that city, immediately adjacent to the City of Torrance; and that the wall gave way after five days of heavy rains had occurred. Testimony of the city engineer of defendant established that the sump was designed by a private developer. The plans were approved by defendant. The sump was designed to retain and absorb surface water running off portions of the streets of defendant. Its effect was to collect the surface water and let it percolate into the ground. The result was to decrease the flow toward plaintiffs' homes on Kingsdale Avenue.

When the earthen wall of the sump collapsed, water came from the sump, across a park adjacent to it and onto plaintiffs' properties and into their homes.

The sump was not designed for all rains. An overflow pipe was installed in the sump by the city. There was some evidence that the pipe had been blocked by a sandbag or piece of burlap.

*Liability for Inverse Condemnation*
*Is Properly an Issue*

The complaint, so far as relevant here, was based on negligence of defendant in designing, constructing and maintaining the sump. The findings of the court on these issues are in favor of defendant and no question concerning them is raised on appeal. The city claims that inverse condemnation is not the theory on which the action was tried and notes that no amendment to the complaint was proferred.

It is clear, however, that the theory of inverse condemnation *was* before the court. Points and authorities were filed by defendant as well as plaintiffs on the first and second days of trial and each discusses inverse condemnation. The court stated it found no inverse condemnation. After trial defendant proposed findings which the court adopted, including as quoted above, one negating liability on an inverse condemnation basis. Having been tried on that issue, as well as others, we may consider it on appeal.

## The Wrong Standard of
## Causation Was Used

■ It is clear beyond cavil that under the most recent decisions private property owners who have suffered damages as a consequence of a public work may rely for relief on article I, section 14, of the California Constitution. (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129]; *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296 [90 Cal.Rptr. 345, 475 P.2d 441]; *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720, 732 [84 Cal.Rptr. 11].) The owner of property is not restricted to a tort recovery based on negligence. (*Albers,* at pp. 257-262.) In *Albers* the court also stated that "any actual physical injury to real property proximately caused by the improvement as deliberately designed and constructed is compensable under article I, section 14, of our Constitution whether foreseeable or not."[2] (62 Cal.2d at pp. 263-264.)

The combination of the concept of "proximate cause" with the elimination of any element of foreseeability led to confusion and criticism. (Van Alstyne *Inverse Condemnation: Unintended Physical Damage* (1969) 20 Hastings L.J. 431, 435-439.) Professor Van Alstyne suggested, instead, that the test to measure the duty[3] of a defendant sought to be held liable in inverse condemnation be in terms of "a 'substantial' cause and effect relationship which excludes the probability that other forces *alone* produced the injury. . . ." (Italics supplied.) (20 Hastings L.J. at p. 436.) Noting this comment, the Supreme Court in *Holtz* v. *Superior Court supra,* 3 Cal.3d at page 304, footnote 9, regarded it as apt but deferred any change in language to a later case "which better reveals the competing considerations on the causation issue."

Building on Professor Van Alstyne's suggestion, an instruction which stated: "In case you find that a substantial cause of said landslide was attributable to conduct on the part of plaintiffs . . . [then they may not recover]" was held to be erroneous in *Blau* v. *City of Los Angeles* (1973) 32 Cal.App.3d 77, 83-87 [107 Cal.Rptr. 727]. The court reasoned that an

---

[2]Two exceptions were mentioned to the rule: damage resulting from exercise of the police power (*Gray* v. *Reclamation Dist. No. 1500* (1917) 174 Cal. 622 [163 P. 1024]) and situations where the state at common law had "the right" to inflict the damage (*Archer* v. *City of Los Angeles* (1941) 19 Cal.2d 19 [119 P.2d 1]). For further discussion of these exceptions and later restrictions imposed upon them, see, inter alia, *Holtz, supra,* at pages 305-307 and *Sheffet, supra,* at pages 732, and 740-741. They are not pertinent here.

[3]Professor Van Alstyne also suggested that foreseeability still may be an element with respect to causation, in the event of the existence of "an intervening force which cuts off and supersedes the original claim of causation." (20 Hastings, L.J. at p. 437.)

inverse condemnation plaintiff may recover if *the public entity's work is a substantial cause of the injury.* The quoted instruction improperly denied recovery if the plaintiffs' conduct contributed to the injury, the court noted.

■ In terms of the present case we do not know the basis for the trial court's finding that no damages occurred to plaintiffs as a proximate result of a deliberately designed and constructed public work.[4] We recognize that the language of this finding is taken from that quoted by us, *supra,* and found in *Albers* v. *County of Los Angeles, supra,* 62 Cal.2d at pages 263-264, (except that where *Albers* used the term "proximate cause," the court below phrased its finding in terms of "proximate result"). This language does not reflect the concept, discussed above, that a public entity is liable if its conduct is *a substantial cause* of the injury. *Blau* uses this standard and we see no reason to depart from it.

There is no controversy over the fact that the wall of the sump gave way, releasing a flood onto plaintiffs' properties. This clearly could be a substantial factor in causing the claimed damages. Thus, in the absence of some other reason, inverse condemnation liability should normally follow. (See *Sheffet* v. *County of Los Angeles* and *Keys* v. *Romley,* both *supra,* and *Granone* v. *County of Los Angeles* (1965) 231 Cal.App.2d 629, 646, 648 [42 Cal.Rptr. 34], for discussions of the liability of a property owner, public or private, who alters the normal flow of surface waters.) If, however, the damage is caused, *solely,* by an unforeseen and supervening cause, then liability will not follow. (*Olson* v. *County of Shasta* (1970) 5 Cal.App.3d 336, 340 [85 Cal.Rptr. 77].) Such a cause in

[4]Other findings also create an aura of uncertainty so far as inverse condemnation is concerned. One finding lists a catalog of reasons why defendant as a public entity is "immune" from liability. Assuming that all of the reasons have factual support in the record and are appropriate to the negligence claim, both the general premise of immunity, as such, and some of the specific reasons are incorrect insofar as inverse condemnation is concerned. For example, one of the cited reasons is that the city "is liable only to the extent provided by *statutory* law." Since inverse condemnation rests on *constitutional* grounds the statement is erroneous. Another reason states that the public property and the drainage and flood control system did not create a substantial risk of injury to foreseeable users "who themselves employed due care for the protection of their own property." To the extent that this suggests a contributory negligence concept it is erroneous with respect to inverse condemnation. (*Blau* v. *City of Los Angeles, supra,* 32 Cal.App.3d 77.) To the extent it implies a necessity for affirmative action of some sort by plaintiffs it may also be in error. (See *Sheffet* v. *County of Los Angeles, supra,* 3 Cal.App.3d 720, 728, fn. 4.) And another reason asserts that defendant's acts, conduct and omissions "resulting in an alleged dangerous condition of public property was reasonable." Granting that this is appropriate to a negligence claim, it is not as to inverse condemnation (*Sheffet, supra,* at p. 728; *Keys* v. *Romley* (1966) 64 Cal.2d 396, 404 [50 Cal.Rptr. 273, 412 P.2d 529]; *Burrows* v. *State of California* (1968) 260 Cal.App.2d 29 [66 Cal.Rptr. 868]).

*Olson* was a "25 year storm," localized and of high intensity, causing the county's drainage facilities to overflow and damage property. In the present case the court found that the rainfall "was of unusual proportions and of more severity in quantity within the time period referred to in the Complaint than had been previously experienced in said area for many years. . ." There is no finding that this rain storm was the sole cause of the damages, or, to adopt Professor Van Alstyne's language, that it "alone" produced the injury.

Nor is there any finding concerning the role played by a sandbag or piece of burlap allegedly blocking the overflow pipe. We do not hold that either such a blockage, if it existed, or the storm, are enough, singly or in combination, to have constituted the sole cause of the flooding. That is a question for the trial court's determination. On remand, that court may proceed as it deems best, by amending its findings and conclusions after hearing, or by retrying the matter in full.

The judgment is reversed accordingly.

Jefferson, Acting P. J., and Dunn, J., concurred.