[Civ. No. 52166. First Dist., Div. Five. Apr. 15, 1983.]

NATHAN C. YEE, Plaintiff and Appellant, v.
CITY OF SAUSALITO, Defendant and Respondent.

**COUNSEL**

Donald W. Curran, G. A. Alschuler and Curran & Alschuler for Plaintiff and Appellant.

Michael F. O'Donnell and Geary, Shea & O'Donnell for Defendant and Respondent.

OPINION

**LOW, P. J.**—The question before us is whether inverse liability can be imposed on a city for property damage arising from the failure of a public improvement to operate as originally intended. Under the circumstances of this case, we hold it can. Accordingly, we reverse the judgment.

Plaintiff Nathan Yee appeals from a summary judgment entered in favor of defendant City of Sausalito. In plaintiff's first amended complaint for inverse condemnation, he alleged that a storm drainage system, running along the westerly side of Bulkley Avenue, ruptured, allowing surface water to seep into subsurface soil adjacent to his property which caused massive soil subsidence of his land. Plaintiff charged that the damage proximately resulted from the use of the public improvement as deliberately designed, constructed and maintained, and seeks relief under article I, section 19 of the California Constitution.

In its motion for summary judgment, the city asserted that plaintiff's complaint, at most, stated a general tort cause of action for negligent maintenance of a public improvement, and not a claim for inverse liability.[1] In support of its motion, the city submitted plaintiff's answers to interrogatories and responses to requests for admissions. According to these documents, plaintiff stated that the gutter was not functioning as deliberately planned or constructed; that a defect existed in the gutter which proximately resulted in the seepage of water; and that the rupture resulted from the city's failure to properly maintain the gutter.

Plaintiff opposed the motion claiming that the seepage of the surface water occurred as a direct function of the gutter as originally designed and constructed. He submitted no counterdeclarations or documents.

The trial court granted the city's motion and entered judgment accordingly. Plaintiff appeals. Specifically, he argues that "[t]he fact that the rupture was not designed or constructed to permit this occurrence is irrelevant when the purpose of the improvement is to prevent the very events and condition of which plaintiff complains."

■ Both parties concede that the damage alleged in appellant's complaint proximately resulted from the seepage of water through the ruptured gutter. The central question is whether appellant has raised any facts from which it may reasonably be inferred that the damage was proximately caused by the use

---

[1] It is alleged that plaintiff failed to file a government tort claim against the city before the statute of limitations expired, and if so, it would appear he has waived his right to seek damages against the city based on general tort liability.

of the public improvement "as deliberately planned and built, . . ." (See *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 262 [42 Cal.Rptr. 89, 398 P.2d 129]; *Marin* v. *City of San Rafael* (1980) 111 Cal.App.3d 591, 595 [168 Cal.Rptr. 750]; *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720, 733-734, 739 $84 Cal.Rptr. 11].)

■ The principle of inverse condemnation will not subject a public entity to general tort liability. (See *Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276, 286 [289 P.2d 1].) "Inverse condemnation is the remedy only for such injury to private property as results from 'a deliberate act carrying with it the purpose of fulfilling one or another of the public objects of the project as a whole' [citation]. Neither 'negligent acts committed during the routine day to day operation of the public improvement,' nor 'negligence in the routine operation having no relation to the function of the project as conceived' gives rise to a claim in inverse condemnation [citation]." (*Eli* v. *State of California* (1975) 46 Cal.App.3d 233, 235 [120 Cal.Rptr. 63]; citing *Bauer, supra,* at p. 286; *Sheffet* v. *County of Los Angeles, supra,* 3 Cal.App.3d 720, 739; *Kambish* v. *Santa Clara Valley Water Conservation District* (1960) 185 Cal.App.2d 107, 111 [8 Cal.Rptr. 215].)

For example, in *Eli,* a prison inmate did not state a cause of action for inverse condemnation arising out of the loss of his personal property. The court held "[t]hat loss resulted, rather, from careless (possibly wilful) error of minor public employees in routine day to day operation of the prison system, rather than from any defect in the planned construction or operation of that system." (*Eli* v. *State of California, supra,* 46 Cal.App.3d at p. 236.)

The fundamental justification for inverse liability is that the government, acting in furtherance of public objectives, is taking a calculated risk that private property may be damaged. (Van Alstyne, *Inverse Condemnation: Unintended Physical Damage* (1969) 20 Hastings L.J. 431, 491.)

In the case of *Albers* v. *County of Los Angeles, supra,* 62 Cal.2d 250, a major landslide occurred as a result of the construction of a county road through the area. Although the county knew the area overlayed a prehistoric slide zone, competent geological studies concluded that the land had stabilized and that there was no danger of further slippage. In finding the county was inversely liable for the resultant damage, the court ruled that "any actual physical injury to real property proximately caused by the improvement *as deliberately designed and constructed* is compensable under [former] article I, section 14, of our Constitution whether foreseeable or not." (*Id.,* at pp. 263-264; italics added.)

It may thus be fairly stated that the focus of judicial inquiry is not whether the injury was expected or foreseeable, but whether that injury was proximately caused by the use of the public improvement for its intended public purpose. (See Van Alstyne, *Inverse Condemnation: Unintended Physical Damage, supra,* 20 Hastings L.J. at pp. 434-436.)

■ The confusion in this lawsuit arises over the interpretation of the phrase "deliberately designed or constructed." The city asserts that since the gutter was not originally designed or constructed to discharge water into the subsurface soil, it is not liable under inverse condemnation. The city relies on the declaration of Norman Wohlschlaeger, director of public works. According to Wohlschlaeger, the purpose of the storm drainage system was ". . . to convey water along the surface of the gutter, to a storm drain inlet located at Bulkley [Avenue] and Princess Street. . . ." and that the ". . . gutter was not in any way designed or constructed in such a manner as to *intentionally permit the underground infiltration* of waters." (Italics added.)

Respondent draws an artificial and, for our purposes, legally irrelevant distinction between the intended use of the public improvements and the unintended or unforeseeable damage which necessarily resulted from the use of the storm drainage system. The traditional tort concepts of foreseeability and fault have been eliminated from inverse condemnation actions. (See *Albers* v. *County of Los Angeles, supra,* 62 Cal.2d at p. 258; *Ingram* v. *City of Redondo Beach* (1975) 45 Cal.App.3d 628, 632 [119 Cal.Rptr. 688].)

It is acknowledged that the gutter was designed to collect and divert water beyond the houses on Bulkley Avenue into a storm drain. It is also conceded that the damage occurred when surface water, diverted by the gutter, seeped into the soil of property adjacent to appellant's land. These facts are similar to the cases in which collapse or rupture of a public improvement was found to result in inverse liability.

In *Ingram* v. *City of Redondo Beach, supra,* 45 Cal.App.3d 628, plaintiffs sued the city for damages when an earthen retaining wall of a drainage sump collapsed, allowing flood waters to flow onto plaintiffs' land. The trial court found in favor of defendant city concluding that no damages occurred as a result of the public improvement as deliberately designed or constructed. In reversing, the Court of Appeal relied on the facts that the drainage sump was a public improvement designed to collect surface water. The retained water was supposed to percolate into the ground with the resultant effect of decreasing the flow to plaintiffs' lands. The Court of Appeal held that in the absence of any evidence of a supervening cause, the collapse of the drainage sump wall could have been a substantial cause of plaintiffs' injury and the city could be liable in inverse condemnation. (*Id.,* at p. 633.)

In *Marin* v. *City of San Rafael, supra,* 111 Cal.App.3d 591, plaintiffs sued the city in inverse condemnation for flood damage resulting from a broken city storm drain running beneath their house. The court reversed a judgment in favor of the city and held that plaintiffs were proximately damaged by the use of the public improvement as deliberately planned and designed. (*Id.,* at pp. 595-596.)

Similarly, inverse liability has been imposed when water seeped through an irrigation canal, overflowed onto plaintiff's property and damaged his crops. (*Powers Farms* v. *Consolidated Irr. Dist.* (1941) 19 Cal.2d 123, 125-126 [119 P.2d 717]; accord *Lourence* v. *West Side Irrigation Dist.* (1965) 233 Cal.App.2d 532, 538-539 [43 Cal.Rptr. 889].)

In this case, the public purpose served by the gutter was to collect and convey surface water away from the surrounding residences. The injury occurred while the improvement was operating as intended. There was no evidence that the injury occurred as a result of the use of the improvement for some purpose unrelated to storm drainage, e.g., as a catch basin for the accumulation of debris. (See *Hayashi* v. *Alameda County Flood Control* (1959) 167 Cal.App.2d 584 [334 P.2d 1048].)

Practically speaking, the city accomplished its intended public purpose of diverting and collecting rain water in an unintended manner and at plaintiff's expense. (See *Sheffet* v. *County of Los Angeles, supra,* 3 Cal.App.3d at p. 732 [county was inversely liable for damage caused by water being diverted onto plaintiff's land by the design of newly created streets].) Appellant should not be made to suffer a disproportionate burden for the benefit of the public as a whole. (*Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 296-299 [142 Cal.Rptr. 429, 572 P.2d 43].)

Respondent's reliance on *Hayashi* v. *Alameda County Flood Control, supra,* 167 Cal.App.2d 584, is misplaced. In *Hayashi* plaintiffs sued defendant flood control district for inverse condemnation. It was alleged that water and debris flowed onto their lands from a break in a levee constructed and maintained by defendant. Plaintiffs charged defendant with failing to properly clear out the debris and to repair the levee, i.e., negligence. They did not charge that the district caused the break in the levee or that it was a defect in design or construction. (*Id.,* at p. 592.) Based on this factual record, the *Hayashi* court concluded that plaintiffs merely stated a general tort claim for negligent operation and maintenance. (*Ibid.*)

Unlike the events in *Hayashi,* the damage here was not alleged to be caused by the accumulation of debris; an unintended purpose of the storm drainange system. (See Van Alstyne, *Inverse Condemnation: Unintended Physical*

*Damage, supra,* 20 Hastings L.J. at p. 460.) Rather, appellant asserted that the damage was substantially caused by the water flowing along the rain gutter, uninhibited by debris or foreign objects until it seeped through the gutter onto appellant's neighbors' lands.

Based on the record before us, appellant has stated a valid cause of action for inverse condemnation and should be allowed to proceed to trial on the merits, subject to all available defenses.

Accordingly, we reverse the judgment.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied May 4, 1983, and respondent's petition for a hearing by the Supreme Court was denied June 22, 1983.