[No. A112185. First Dist., Div. Two. Aug. 15, 2006.]

WES TILTON, as Cotrustee, etc., et al., Plaintiffs and Appellants, v. RECLAMATION DISTRICT NO. 800, Defendant and Respondent.

**COUNSEL**

Aiken, Kramer & Cummings, Inc., Garret David Murai and Matthew F. Graham for Plaintiffs and Appellants.

Downey Brand, Debbie Jean Vorous and David R. E. Aladjem for Defendant and Respondent.

OPINION

HAERLE, J.—

## I. INTRODUCTION

Appellants,[1] the owners of two parcels of property in Contra Costa County's Discovery Bay community, filed suit against the respondent Reclamation District No. 800 (District), which had previously repaired a levee on the properties. Via two separate orders, one relating to appellants' initial complaint, and the second relating to its amended complaint, the superior court sustained demurrers to six of the seven causes of action alleged by appellants without leave to amend. It also sustained the District's demurrer to another cause of action alleged in appellants' amended complaint, albeit with leave to amend. Appellants opted not to amend their complaint, instead dismissing it with prejudice. Appellants appeal, contending the trial court was incorrect in the legal bases upon which it sustained, without leave to amend, the District's demurrers to its six causes of action. They also appeal from the trial court's order granting special demurrers and a motion to strike filed by the District. We shall affirm the judgment of dismissal.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As noted, appellants, as trustees of the Tilton Family Trust, are the owners of two residences and parcels built on an "urban levee," which lies within the jurisdictional boundaries of respondent District.[2] The District was alleged to be (1) a reclamation district formed pursuant to Water Code section 50000 et seq., (2) a governmental entity located in Contra Costa County, and (3) pursuant to Water Code section 50652, responsible for supervising the maintenance and operation of reclamation works within its boundaries.

---

[1] The plaintiffs in this original complaint were individuals Wes and Shirley Tilton, apparently husband and wife, and the original owners of the two lots. The District attacked their original complaint based on their alleged lack of standing because title to the property was held by their trust. The trial court sustained respondents' original demurrer on this ground and the amended complaint was filed on behalf of the trust as a single entity. This was how the matter was entitled throughout the rest of the proceedings below and in the parties' briefs to us. However, the trial court and the parties have overlooked the fact that a trust cannot be named as a party. (See Prob. Code, § 17200, subd. (a) and Code Civ. Proc., § 369, subd. (a)(2).) We have therefore designated the two trustees as the appellants herein.

[2] Although the point is not made clear in either complaint, in their opening brief appellants clarify that the trust "owns two single family residences . . . located on top of the levee which is owned by the District and the levee is in turn located on top of the real property owned by the Trust."

In June 2003, appellants allegedly learned from a report prepared by the District's engineer that, in 1985 and either 1997 or 1998, there had been failures in the levee underlying the property, failures that had caused damage to the property. They also alleged that in 2003, the levee on the lots failed again, causing further damage to them. Appellants alleged that the 1985 failure was due to improper maintenance of the levee by the District, and that both the 1997/1998 and 2003 failures were caused either by riprap placed on top of the levees which caused instability therein and/or the failure of the District to properly stabilize the levee after the earlier failures. Appellants alleged that, as a result of these three failures, the rear of the homes on the two lots "are pulling away from the structures" and that "the structures themselves have become un-level and there is fear that [the lots] are slowly sliding into the bay."

In September 2003, appellants submitted a claim for damages allegedly owing from the District pursuant to the Tort Claims Act, Government Code section 810 et seq. The District denied the claim in May 2004. In November 2004, appellants filed their first complaint against the District; it consisted of seven causes of action for inverse condemnation, negligence, trespass, nuisance, failure to provide lateral and subjacent support, maintaining public property in a dangerous condition, and a violation of 42 United States Code section 1983.

The District demurred to all causes of action, and the issues raised thereby were fully briefed and argued to the trial court. On April 25, 2005, it sustained the District's demurrer without leave to amend as to the inverse condemnation and 42 United States Code section 1983 causes of action, but with leave to amend as to the remainder. Four days later, appellants filed their amended complaint, this time realleging only the five causes of action as to which it was granted leave to amend, namely: (1) negligence, (2) failure to provide lateral and subjacent support, (3) nuisance, (4) trespass, and (5) dangerous condition on public property. They sought to recover an amount in excess of $1 million.

The District again demurred and the issues raised were again fully briefed and argued to the trial court. On July 29, 2005, that court sustained the general demurrer without leave to amend as to the first four causes of action on the ground that the appellants had failed to plead a statutory basis for the District's liability under Government Code section 815.6, i.e., that none of the statutes alleged by appellants imposed a mandatory duty upon the District. As to appellants' fifth cause of action, the trial court sustained the District's demurrer, but this time with leave to amend. It also granted a

motion to strike filed by the District. In so doing, it ruled that (1) appellants had failed to comply with Code of Civil Procedure section 425.16 regarding their damage claim, (2) appellants had failed to indicate the amounts of general and special damages being sought, and (3) to the extent appellants were seeking damages for the alleged 1985 and 1997/1998 damage to their lots, the claim was barred by the statute of limitations set forth in Government Code section 911.2 because of appellants' failure to plead "facts showing their inability to have made earlier discovery despite reasonable diligence."

On August 5, 2005, appellants filed a request for dismissal of their fifth cause of action with prejudice, which request was granted on August 10, 2005. On August 12, 2005, a judgment of dismissal of the entire action was entered in favor of the District, with the District being awarded its costs. Appellants filed a notice of appeal on October 11, 2005.

## III. DISCUSSION

In reviewing a lower court's ruling sustaining a demurrer, our standard of review is, of course, de novo. As our Supreme Court has recently held: "When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations. [Citation.] Courts must also consider judicially noticed matters. [Citation.] In addition, we give the complaint a reasonable interpretation, and read it in context. [Citation.] If the trial court has sustained the demurer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

A. *The demurrer was properly sustained to appellants' two "taking" causes of action.*

In their briefs, the parties first discuss the correctness of the trial court's ruling sustaining the District's demurrers, without leave to amend, to the causes of action for inverse condemnation and the alleged violation of 42 United States Code section 1983 set forth in appellants' initial complaint.[3]

---

[3] As they may of course do (see Code Civ. Proc., § 472c, subd. (b)(1)), appellants appeal not only from the trial court's action in sustaining, without leave to amend, the District's demurrer

We will follow the parties' lead and address that issue first, also. And, as they do, we will deal with those causes of action in tandem because, as appellants pled in their initial complaint, the basis of the section 1983 action was alleged to be that the District's "failure to properly maintain the levee upon which [appellant's] Property is located constitutes a taking in violation of 42 U.S.C. [section] 1983." This is substantively the same allegation appellant made in its inverse condemnation cause of action in the same initial complaint.

We agree with the trial court that, as pled, these causes of action fail to state a claim in either inverse condemnation or for a "taking" of private property for a public use. This conclusion derives, at least in part, from our Supreme Court's decision in *Customer Co. v. City of Sacramento* (1995) 10 Cal.4th 368 [41 Cal.Rptr.2d 658, 895 P.2d 900] (*Customer Co.*). In that case, the court held that the defendant City of Sacramento could not be liable in inverse condemnation for allegedly extensive property damage caused to a grocery and liquor store when the police fired tear gas into the store in an effort to capture an apparently armed and dangerous felony suspect. (*Id.* at p. 371.) In the course of so holding, the court discussed extensively the breadth and limits of the inverse condemnation principle. The decision especially addressed the impact of the term "or damaged" as used in the opening sentence of article I, section 19, of the California Constitution: "Private property may be taken *or damaged* for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." (Cal. Const., art. I, § 19, italics added.) In an extended opinion by now-Chief Justice George, the court effectively held that the 1879 addition of the term "or damaged" to the former just compensation provision of the constitution "was not intended to expand the scope of the constitutional compensation provision beyond the ambit of eminent domain and public improvements. It appears, instead, that the words 'or damaged' were added to clarify that the government was obligated to pay just compensation *for property damaged in connection with the construction of public improvements,* even if the government had not physically invaded the damaged property." (*Customer Co., supra,* 10 Cal.4th at p. 379, italics added.)

In support of this interpretation of the 1879 amendment, the court stated: "It seems apparent that the addition of the words 'or damaged' to the 1879 Constitution was intended to clarify that application of the just compensation provision is not limited to physical invasions of property taken for 'public use' in eminent domain, but also encompasses special and direct damage to

---

to the four causes of action in their amended complaint, but also from its earlier ruling sustaining, also without leave to amend, the third (inverse condemnation) and seventh (42 U.S.C. § 1983) causes of action in their initial complaint.

adjacent property resulting from the construction of public improvements. There is nothing that indicates the provision was intended to expand compensation outside the traditional realm of eminent domain . . . ." (*Customer Co., supra,* 10 Cal.4th at pp. 379–380.)

■ In further support of this interpretation, the court proceeded to cite and discuss numerous consistent precedents both of its own and of the Courts of Appeal. Among them was *House v. L.A. County Flood Control Dist.* (1944) 25 Cal.2d 384 [153 P.2d 950], which the *Customer Co.* court summarized as holding "that damage caused by the design of a public project gave rise to an inverse condemnation action . . . ." (*Customer Co., supra,* 10 Cal.4th at p. 381.) But that court then went on to quote, and indeed emphasize, the concurring opinion of then-Justice Traynor that " '[t]he destruction or damaging of property is sufficiently connected with "public use" as required by the Constitution, if the injury is a result of dangers *inherent in the construction of the public improvement* as distinguished from dangers *arising from the negligent operation of the improvement.*' " (*Id.* at p. 382.)

Next, the court discussed *Bauer v. County of Ventura* (1955) 45 Cal.2d 276, 286 [289 P.2d 1] (*Bauer*), where the court, while allowing the property owners to recover for damage caused by floodwaters diverted onto their property by a public watercourse and drainage system, took pains to carefully limit that principle in a sentence also emphasized in the *Customer Co.* opinion: " '*Damage resulting from negligence in the routine operation having no relation to the function of the project as conceived is not within the scope of the rule applied in the present case.*' " (*Customer Co., supra,* 10 Cal.4th at p. 382.)[4]

But perhaps the closest case factually to the present one cited approvingly by the *Customer Co.* court (see *Customer Co., supra,* 10 Cal.4th at p. 381) is *Hayashi v. Alameda County Flood Control* (1959) 167 Cal.App.2d 584 [334 P.2d 1048] (*Hayashi*), a case authored by then-Presiding Justice Raymond Peters of Division One of this court. In that case, the plaintiffs' greenhouse and plant-growing suffered substantial damage when the levee maintained by the defendant flood control district along Alameda Creek

---

[4] The *Bauer* opinion also contains the following sentences not quoted by the *Customer Co.* court: "The plaintiffs, as stated, also allege that the collection of debris and stumps in the [storm drain ditch constructed by the defendant county] raised an obstruction which caused the water to back up on their land. If this was due to the *mere negligent operation of the ditch system, it is not within the scope of liability* as a taking or damaging for a public use under [the then operative constitutional provision]." (*Bauer, supra,* 45 Cal.2d at p. 286, italics added.)

suffered a 60-foot break in December 1955. The plaintiffs notified the defendant district of the break and the threat of damage, but no repairs were made, with the result that water and debris carried by the water damaged the plaintiffs' property twice in January 1956. The plaintiffs sued for both negligence and inverse condemnation. Although the appellate court sustained their negligence count under the law then applicable to such counts, it held that the district had no liability to the plaintiffs under a theory of inverse condemnation, stating: "The most recent cases have made a distinction between negligence which occurs when a public agency is carrying out a deliberate plan with regard to the construction of public works, and negligence resulting in damage growing out of the operation and maintenance of public works. These cases hold that the damage resulting from the former type of negligence is compensable under article I, section 14, whereas damages resulting from the second type of negligence are not recoverable in an inverse condemnation proceeding, but are recoverable, if at all, only in a negligence action. [Citing *Bauer* and other cases.] It has been definitely held that a property owner may not recover in an inverse condemnation proceeding for damages caused by acts of carelessness or neglect on the part of a public agency. [Citation.] In the present case the district did not cause the original break in the levee, nor is it charged that such occurred by reason of negligence. Negligent design or construction is not charged, nor did the district deliberately divert the water onto the plaintiffs' lands. It is charged with negligent failure to act thereafter, that is, with negligence in the operation and maintenance of its property. In our opinion that does not charge a taking of property for public use under the Constitution." (*Id.* at pp. 591–592.)

A year after *Hayashi* was decided, this court, in an opinion authored by Justice Murray Draper, cited it approvingly in a similar case, *Kambish v. Santa Clara Valley Water Conservation District* (1960) 185 Cal.App.2d 107 [8 Cal.Rptr. 215] (*Kambish*). There, the plaintiff's "land and personalty" (*id.* at p. 108) were damaged by flooding from overflows of Los Alamitos Creek. Those overflows resulted from heavy rains in December 1955, rains that caused the Almaden Dam reservoir to fill up quickly and send a large volume of water down its spillway, into the creek, and thence some onto plaintiff's property. A lower court had found liability by the defendant district based solely on inverse condemnation, but this court disagreed. Citing both *Bauer* and *Hayashi*, we held: "Damage resulting from negligence in routine operation having no relation to the function of the project as conceived is not a taking for public use and thus not a basis for inverse condemnation." (*Id.* at p. 111.)

More recently, in a case also involving damage to real property from water overflowing from city streets, a division of the Second District held to the

same effect: "[I]nverse condemnation does not involve ordinary acts of carelessness in the carrying out of the public entity's program. [Citations.] Property is only deemed taken or damaged for a public use if the injury is a *necessary consequence* of the public project." (*Sheffet v. County of Los Angeles* (1970) 3 Cal.App.3d 720, 733–734 [84 Cal.Rptr. 11] (*Sheffet*), italics added.)[5]

Appellants argue that two cases decided by Courts of Appeal since *Customer Co.* clarify that defective maintenance of flood control or water retention systems can indeed provide a valid legal basis for an action for inverse condemnation. The cases they rely upon are *Arreola v. County of Monterey* (2002) 99 Cal.App.4th 722 [122 Cal.Rptr.2d 38] (*Arreola*) and *Paterno v. State of California* (2003) 113 Cal.App.4th 998 [6 Cal.Rptr.3d 854] (*Paterno*). The first, *Arreola*, involved the 1995 failure of the Pajaro River levee on the river forming the boundary between Monterey and Santa Cruz Counties. *Paterno* involved the 1986 failure of the Linda levee in Yuba County, at the confluence of the Yuba and Feather Rivers. In both cases, the Courts of Appeal agreed that the defendants (or at least one of them) was liable in inverse condemnation for their respective failures. But both opinions, although not citing *Customer Co.*, are entirely consistent with the principles laid down in that case as well as the rulings in *Hayashi, Kambish* and *Sheffet*.

■ This is particularly true of the *Arreola* decision, which not only cites *Hayashi* but carefully distinguishes the fact situation there, i.e., a defendant charged with merely routine maintenance of a levee, from a defendant which designed, constructed *and* was thereafter charged with implementing a plan for its maintenance. That opinion states: "A public entity's maintenance of a public improvement constitutes the constitutionally required public use so long as it is the entity's deliberate act to undertake the particular plan or manner of maintenance. [Citing *Bauer.*] [¶] The necessary finding is that the wrongful act be part of the deliberate design, construction, or maintenance of the public improvement. 'The fundamental justification for inverse liability is that the government, acting in furtherance of public objectives, is taking a calculated risk that private property may be damaged.' [Citations.] That is why simple negligence cannot support the constitutional claim. For example, in *Hayashi*[, *supra,*] 167 Cal.App.2d 584 [334 P.2d 1048], the appellate court held that the plaintiffs had not stated a cause of action for inverse condemnation because, although the defendant's failure to repair a levee within 10 to 21 days was negligence, it was not 'a deliberate plan with regard to the

---

[5] Curiously, neither *Hayashi, Kambish,* nor *Sheffet* is cited by either party in their briefs to us.

construction of public works.' (*Id.* at pp. 590–592.) That is not to say that the later characterization of a public agency's deliberate action as negligence automatically removes the action from the scope of the constitutional requirement for just compensation. So long as the entity has made the deliberate calculated decision to proceed with a course of conduct, in spite of a known risk, just compensation will be owed. . . . [¶] . . . [¶] We conclude that in order to prove the type of governmental conduct that will support liability in inverse condemnation it is enough to show that the entity was aware of the risk posed by its public improvement and deliberately chose a course of action—or inaction—in the face of that known risk." (*Arreola, supra,* 99 Cal.App.4th at pp. 742, 744.)

Similarly, in *Paterno*, Justice Morrison, writing for a panel of the Third District, summarized that court's holding as follows: "[W]e conclude Paterno's damages were directly caused by an *unreasonable State plan* which resulted in the failure of the Linda levee and the State is liable to pay for Paterno's damages. In large part our conclusion is based on the fact that the levee system benefited all of California and saved billions of dollars, and to require Paterno to bear the cost of the partial failure of that system—a failure caused by construction and operation of an unstable levee—would violate *Locklin*[ *v. City of Lafayette* (1994) 7 Cal.4th 327 [27 Cal.Rptr.2d 613, 867 P.2d 724]]. *A basic part of the State's flood plan was to accept existing levees as much as possible, to reduce the cost of an extensive, coordinated, flood control system.* The People benefited from that cost-saving feature. However, the record shows the State never tested the Linda levee, or reviewed the records of its construction, to see if it was as strong as the global plans assumed it was, and the State even ignored specific warnings about the levee's weaknesses. In such circumstance, the costs of the levee failure must be deemed part of the deferred costs of the project." (*Paterno, supra,* 113 Cal.App.4th at pp. 1003–1004, italics added.)

■ Both *Arreola* and *Paterno* are thus entirely consistent with the principle articulated by Justice George in *Customer Co.*, by Justice Peters in *Hayashi*, and by this court in *Kambish*, that, although there may be liability in inverse condemnation where levee failures are integrally connected with a flawed plan for those levees and/or flawed construction, there is no such liability where similar failures are the result of negligent or inadequate operation and maintenance.[6]

---

[6] Several other "unwanted water" cases decided along the way, and cited in many of the referenced decisions, make the same distinction although, like the *Arreola* and *Paterno* courts, end up concluding that the failures were integrally connected to an overall plan. (See, e.g., *Yee v. City of Sausalito* (1983) 141 Cal.App.3d 917, 920–923 [190 Cal.Rptr. 595], and *McMahan's of Santa Monica v. City of Santa Monica* (1983) 146 Cal.App.3d 683, 694–698 [194 Cal.Rptr. 582].) However, both *Yee* and *McMahan's* are now of questionable value since our Supreme

■ Unfortunately for appellants, their initial complaint in this case (the only pleading raising the "taking" issue) puts them on the wrong side of that line. All they ever pled on the issue of the District's involvement with maintenance of the levee were rather standard and perfunctory allegations that (1) "defendant . . . is responsible for the maintenance of the levee," (2) "the failure was due to defendant maintaining the levee in a manner such that it was too steep for underwater conditions," (3) "defendants substantially participated in the maintenance of the levee upon which plaintiffs' Property is located and that such participation was for the use and/or benefit of the public," and "[p]laintiffs are further informed and believe that plaintiffs have been damaged as a direct and proximate result of defendants' failure to properly maintain the levee."[7]

These allegations do not meet the test we derive from the precedents just discussed, i.e., that garden variety inadequate maintenance, as distinguished from a faulty plan involving the design, construction and maintenance of a levee, is not an adequate basis for an inverse condemnation claim. Moreover, our examination of the record of the pleadings filed in the first round of demurrers, when this issue was addressed and determined by the trial court, reveals no suggestion by appellants that it could allege anything regarding the District's involvement in any underlying flawed plan for the maintenance of the levee in question. Nor do appellants make any such suggestion in their briefs to us.

B. *Appellant failed to allege the required "mandatory duty."*

Which brings us to the trial court's grant of the District's demurrer, without leave to amend, as to four tort causes of action pled again in appellants' amended complaint, namely those for negligence, nuisance, trespass, and "failure to provide lateral and subjacent support." As noted above, the trial court sustained the District's demurrer without leave to amend as to these causes of action because, it held, as a matter of law the District was not under a "mandatory duty" to prevent leakage of its levees.

The whole concept of "mandatory duty" had its genesis in the 1963 adoption by the Legislature of the Tort Claims Act, Government Code section 810 et seq.[8] Section 815 of that law provides in pertinent part: "Except as

---

Court has now suggested, indeed twice, that both seem to have relied upon an incorrect "strict liability" standard. (See *Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 566–567 [253 Cal.Rptr. 693, 764 P.2d 1070], and *Bunch v. Coachella Valley Water Dist.* (1997) 15 Cal.4th 432, 443–444 [63 Cal.Rptr.2d 89, 935 P.2d 796].)

[7] The occasional use of the plural term "defendants" in appellants' initial complaint may have been due to the naming of Doe defendants in the caption.

[8] Hereafter, unless otherwise noted, all statutory references are to the Government Code.

otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."

Section 815.6 then follows with this critical language: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

The entire crux of the parties' arguments to us regarding the trial court's sustaining of the District's demurrer to the four tort causes of action of appellants' amended complaint focuses on whether the California Legislature, or any other pertinent body, has "imposed by an enactment" a mandatory duty upon bodies such as the District to avoid leakage or similar failures of their levees. But, before getting into those specifics, some background on the current state of the law regarding when a "mandatory duty" is and is not found to have been imposed is pertinent.

█ Our Supreme Court recently focused on this issue in *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490 [93 Cal.Rptr.2d 327, 993 P.2d 983] (*Haggis*). There, a six-to-one majority of the court[9] found that, mainly because of the "mandatory duty" requirement of section 815.6, the city was not liable to a homeowner "for damages he suffered after purchasing a developed piece of property on unstable land." (*Id.* at p. 495.) The court summarized the applicable tests under that statute as follows: "First and foremost, application of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.] It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion. [Citation.] [¶] Whether an enactment creates a mandatory duty is a question of law: 'Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts.' [Citation.] The enactment's language 'is, of course, a most important guide in determining legislative intent, [but] there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion.' [Citation.] [¶]

---

[9] Justice Mosk filed a concurring and dissenting opinion in which he disagreed with Justice Werdegar's majority opinion only with regard to one of the plaintiff's four causes of action. (*Haggis, supra,* 22 Cal.4th at pp. 509–511.)

Second, but equally important, section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is ' "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." ' [Citation.]    ▮    Our inquiry in this regard goes to the legislative *purpose* of imposing the duty. That the enactment 'confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6. [Citation.]" (*Id.* at pp. 498–499; see also, to substantially the same effect, *Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 630–631 [76 Cal.Rptr.2d 489, 957 P.2d 1323]; *Nunn v. State of California* (1984) 35 Cal.3d 616, 624–625 [200 Cal.Rptr. 440, 677 P.2d 846]; *MacDonald v. State of California* (1991) 230 Cal.App.3d 319, 327–329 [281 Cal.Rptr. 317]; *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1239–1241 [271 Cal.Rptr. 72].)

Appellants do not contend that any state or federal statute imposes the requisite "mandatory duty" in this case. Indeed, in their reply brief, they expressly disclaim any argument that Water Code sections 8608 or 50652 create any mandatory duty on the part of the District to properly maintain, and prevent leakage of, its levees. Instead, they contend that regulations adopted by the Federal Emergency Management Agency (FEMA), the United States Army Corps of Engineers (Corps), and the California Reclamation Board (Reclamation Board), either individually or in combination create such a duty.[10]

Specifically, in their amended complaint, appellants alleged: "10. The Reclamation Board is responsible for establishing standards for the maintenance and operations of levees in the Sacramento and San Joaquin Drainage District pursuant to Water Code section 8608. Regulations adopted by the Reclamation Board require levees to be maintained and operated in accordance with guidelines promulgated by the U.S. Army Corps of Engineers. [¶] 11. Properties within the jurisdictional boundaries of the District lie within the Flood Insurance Rate Maps of the Federal Emergency Management Agency (FEMA) which are used to establish flood insurance rates. The Department of Water Resources is responsible for coordinating the National Flood Insurance Program (NFIP) administered by FEMA. Levees receiving flood insurance are required to be maintained and operated in accordance with regulations implementing the NFIP. . . . [¶] . . . [¶] 17. Subsequently, Plaintiff learned that the District's maintenance procedures did not comply with applicable guidelines and regulations of the U.S. Army Corps of

---

[10] Pursuant to sections 810.6 and 811.6, any such regulation can constitute an "enactment" for purposes of section 815.6.

Engineers and NFIP, including, but not limited to U.S. Army Corps of Engineers, *Design and Construction of Levees, Engineer Manual, Engineering and Design*, EM 1110-2-1913 and *Design of Sheet Pile Walls, Engineer Manual, Engineering and Design* EM 1110-2-2504 and 44 CFR 65.10. . . . [¶] . . . [¶] 20. The District owed a mandatory duty to properly maintain the levee located on Plaintiff's Property pursuant to guidelines and regulations of the U.S. Army Corps of Engineers and NFIP. Plaintiff is informed and believes that the District breached said duty by negligently maintaining the levee, including, but not limited to, maintaining the levee in a manner such that it was too steep for underwater conditions, placing riprap on the levee which created driving forces causing instability, and failing to properly stabilize the levee following its earlier failures, all in a manner which were not in conformance with the guidelines and regulations of the U.S. Army Corps of Engineers and NFIP."

In their briefs to us and their pleadings and oral argument to the trial court, however, appellants are more specific as to the regulations they contend impose the "mandatory duty" on the District to maintain the levees free from subsidence or leakage. First of all, they concede that, by themselves, the Corps' regulations are not mandatory. They are clearly correct in this concession, inasmuch as the first page of the relevant Corps manual cited by appellants recites that the manual's purpose "is to present basic principles used in the design and construction of earth levees" and that it *"is intended as a guide for designing and constructing levees* and not intended to replace the judgment of the design engineer on a particular project." (Department of the Army, U.S. Army Corps of Engineers, Manual No. 1110-2-1913 (Apr. 30, 2000) italics added.)

However, in addition to the clearly discretionary meaning of the phrase emphasized above, there are two other reasons why the Corps' manual cannot, in and of itself, be deemed to impose a mandatory duty: (1) it is a "manual" and not a "regulation," and hence not within the definition of "enactment" in section 810.6 and (2) it clearly relates only to the design and construction of levees, not to their "maintenance" thereafter, the issue upon which, per appellants' repeated reliance on that term in their amended complaint, their four tort claims are based.

Appellants attempt to answer this argument by combining the Corps' manual with a regulation adopted by the Reclamation Board pursuant to Water Code sections 8571, 8608, 8609 and 8710, namely California Code of Regulations, title 23 section 120, subd. (a), which provides: "Levees constructed, reconstructed, raised, enlarged, or modified within a floodway shall be designed and constructed in accordance with the U.S. Army Corps of Engineers manual, 'Design and Construction of Levees' (EM 1110-2-1913 dated March 31, 1978, which is incorporated by reference) . . . ."

As the trial court held, however, the addition of this regulation, even including the verb "shall," does not change the result. In the first place, the document being incorporated is, as just noted, phrased in discretionary terms. More importantly, the three pages of section 120 of California Code of Regulations, title 23 are clearly directed at the design, construction, or reconstruction of levees, not their routine—or even nonroutine—maintenance, a word which is used repeatedly in the key allegations of appellant's amended complaint, but not at all in section 120. As the authorities just discussed make clear, the imposition of a "mandatory duty" (especially pursuant to a state regulation incorporating a federal manual) "must *require* . . . that a particular action be taken or not taken." (*Haggis, supra,* 22 Cal.4th at p. 498.)

Finally, appellants' reliance on a FEMA regulation designed to help implement the federal government's National Flood Insurance Program is very much misplaced. That regulation, 44 Code of Federal Regulations section 65.10, appears in a subchapter entitled "Insurance and Hazard Mitigation" and a part thereof entitled "Identification and Mapping of Special Hazard Areas." The section itself is entitled: "Mapping of areas protected by levee systems" and provides (in the part relied upon by appellants): "General. For purposes of the NFIP, FEMA will only recognize in its flood hazard and risk mapping effort those levee systems that meet, and continue to meet, minimum design, operation, and maintenance standards that are consistent with the level of protection sought through the comprehensive flood plain management criteria established by § 60.3 of this subchapter." (44 C.F.R. § 65.10 (2005).)

The good news for appellants is that, unlike the Corps' manual and the Reclamation Board regulation also relied upon by them, the word "maintenance" *is* used in this regulation. The bad news is that a definition of what the now-famous FEMA will and will not "recognize in its flood hazard and risk mapping effort" cannot reasonably be construed to impose a "mandatory duty" upon a levee district such as the District to maintain its levees in any particular manner.[11]

---

[11] Further, appellants nowhere cite, much less discuss, what 44 Code of Federal Regulations section 60.3, referenced at the end of the subsection they rely upon, says. We have. That section is part of subpart A of part 60 of title 44 of the Code of Federal Regulations. An earlier section of subpart A defines its purpose as follows: "(a) The [National Flood Insurance Program, 42 U.S.C. §§ 4001–4128; see 44 C.F.R. § 59.1, hereafter NFIP] provides that flood insurance shall not be sold or renewed under the program within a community, unless the community has adopted adequate flood plain management regulations consistent with Federal criteria. . . . [¶] (b) This subpart sets forth the criteria developed in accordance with the [NFIP] by which the Administrator will determine the adequacy of a community's flood plain management regulations." (44 C.F.R. § 60.1(a) & (b) (2005).) Section 60.3 of subpart A follows a few pages later, is almost six single-spaced pages long, and is entitled "Flood plain management criteria for flood-prone areas." This regulation, and for that matter section 65.10

In sum, the trial court was correct in concluding that appellants' amended complaint did not plead the existence of a "mandatory duty" of the sort envisioned by section 815.6 imposed upon the District regarding the maintenance of its levees.

C. *None of the other issues raised by appellant require review by this court.*

There are no other issues raised by appellants which require review by us. As to appellants' fifth cause of action alleging "Dangerous Conditions on Public Property," appellants concede in their reply brief to us that their August 5, 2005, request for dismissal of the action with prejudice forecloses any review of the court's ruling sustaining the District's demurrer to this cause of action, albeit with leave to amend. Appellants are correct in this concession because, as the District points out in its brief to us, a voluntary dismissal with prejudice forecloses appeal of any issues not previously ruled on via a "judicial act" of the court. (See, e.g., *Gray v. Superior Court* (1997) 52 Cal.App.4th 165, 170–171 [60 Cal.Rptr.2d 428].)

For the same reason and one other, we need not and do not consider appellants' challenge of the trial court's (1) grant of the District's special demurrer to the first amended complaint, (2) grant of the District's motion to strike appellants' damage claim on two separate grounds, and (3) refusal to consider a declaration of Wes Tilton filed by appellants.[12]

The second reason we do not consider those issues is our agreement, detailed in the two previous sections of this decision, with the substantive grounds upon which the trial court granted the District's general demurrer's to appellants' other six causes of action without leave to amend. Since, for the reasons discussed in those sections, appellants failed to plead any substantively valid causes of action, issues regarding, e.g., the specificity of damage claims, the nature of the alleged "dangerous condition" of the levee, or the applicability of any particular statute of limitations are irrelevant.

---

also, appears to regulate when and under what circumstances FEMA will and will not apply the federal NFIP to a given area. It clearly has nothing to do with when and how flood control levees are to be maintained by a state or local agency.

[12] There is yet a third reason why we will not address the trial court's refusal to consider this declaration: the issue was waived as to this court because it was noted only in appellants' reply brief, and not in their opening brief. (See, e.g., 2 Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2004) ¶ 9:78.2, and cases cited therein.)

## IV.   DISPOSITION

The judgment of dismissal is affirmed.

Kline, P. J., and Richman, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 29, 2006, S146835.